IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

IMMIGRATION SOLUTIONS, INC.,
incorporated in Florida d/b/a
Sam Asbury,

No. 2:21-cv-01186-HL

Plaintiff,

**OPINION
AND ORDER**

v.

JOSHUA C. STIFFLER, an
Oregon resident,

Defendant.
_____

HALLMAN, United States Magistrate Judge:

Plaintiff Immigration Solutions, Inc. ("ISI") filed a complaint against Defendant Joshua

C. Stiffler ("Defendant"), alleging claims under Oregon state law for breach of contract, theft,

negligent misrepresentation, fraud, and unlawful trade practices and invoking this Court's

diversity jurisdiction under 28 U.S.C. § 1332(A)(1).  This matter comes before the Court on

Defendant's Motion to Dismiss all claims for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. ("FRCP") 12(b)(1). The Court heard oral argument on this motion on January 21, 2022. ECF 22. For the reasons discussed below, the Court grants Defendant's Motion to Dismiss and dismisses the case without prejudice.[1]

## BACKGROUND

ISI is a corporation that provides legal services to immigrants in both Oregon and Florida. Compl. ¶ 6, ECF 2. Sam Asbury is Plaintiff's attorney, as well as ISI's President, sole officer, sole shareholder, and sole employee. *Id.* Defendant owns a construction contracting business and is a resident of Oregon. *Id.* ¶¶ 7, 23.

ISI owns a residential investment property ("property") in Milton-Freewater, Oregon. *Id.* ¶ 9. On May 19, 2021, Defendant provided Mr. Asbury, acting in his capacity as ISI's President, with a written bid for construction services to be performed at the property. *Id.* ¶¶ 4, 9. After modifying the initial bid, Defendant ultimately provided Mr. Asbury with a written bid for $31,836. *Id.* ¶ 9. Mr. Asbury accepted the revised written bid. *Id.* ¶ 10. Mr. Asbury wrote a check payable to Defendant for $15,918 from the ISI business account, and Defendant cashed it on June 1. *Id.* ¶ 11.

On June 7, Mr. Asbury visited the property and noticed that his three-legged pipe stand valued at $811 was missing. *Id.* ¶ 18. When Mr. Asbury asked Defendant about the pipe stand, Defendant responded that he thought it was left behind by one of his employees, so he threw it in the garbage and buried it in concrete. *Id.* ¶ 19.

---

[1] Defendant simultaneously filed a Motion to Disqualify Plaintiff's Counsel. *See* Def.'s Mot. Disqual. Pl.'s Attorney, ECF 15. Because the Motion to Dismiss is dispositive of this action as a whole, the Court declines to address the Motion to Disqualify in this Opinion and Order.

On July 5, 2021, Defendant ceased construction on the property. *Id.* ¶ 12. Defendant refused to continue work until he received payment in full for work that was completed but not included in the written bid. *Id.*

ISI filed suit on August 12, 2021. *Id.* at 11. ISI asserts six claims for relief: (1) common law breach of contract; (2) declaratory relief; (3) common law theft; (4) negligent misrepresentation pursuant to Or. Rev. Stat. § ("ORS") 701.128; (5) common law fraud; and (6) a violation of the Unlawful Trade Practices Act ("UTPA") pursuant to ORS 646.605-656. *Id.* ¶¶ 8-30. Defendant has now filed a Motion to Dismiss for lack of subject matter jurisdiction. Def.'s Mot. Dismiss, ECF 13.

## LEGAL STANDARD

Rule 12(b)(1) of the Federal Rules of Civil Procedure governs motions to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). When a party challenges subject matter jurisdiction, the burden of proof is on the party asserting that jurisdiction exists. *See Ass'n of American Med. Coll. v. U.S.*, 217 F.3d 770, 778 (9th Cir. 2000); *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (holding that "[t]he party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists") (citations omitted). "In evaluating the Rule 12(b)(1) motion to dismiss, the district court [may] consider[] affidavits furnished by both parties. This is proper because Rule 12(b)(1) attacks on jurisdiction can be either facial, confining the inquiry to allegations in the complaint, or factual, permitting the court to look beyond the complaint." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). "Ordinarily, a case dismissed for lack of subject matter jurisdiction should be dismissed without prejudice so that a plaintiff may reassert [his] claims in a competent court." *Frigard v. United States*, 862 F.2d 201, 204 (9th Cir. 1988).

**DISCUSSION**

The threshold question is whether this Court has subject matter jurisdiction over ISI's claims against Defendant. Federal district courts have original jurisdiction of civil actions where the matter in controversy is (a) between citizens of different states and (b) exceeds the sum or value of $75,000. 28 U.S.C. § 1332(a)(1). Defendant argues that all ISI's claims should be dismissed for lack of subject matter jurisdiction under both prongs. First, Defendant claims that there is a lack of diversity between the parties because a substantial portion of ISI's business is located in Oregon, making ISI an Oregon citizen. Def.'s Mot. Dismiss 6-10. Second, Defendant asserts that ISI's complaint does not meet the requisite amount in controversy of $75,000 because there is a legal certainty that ISI cannot recover the punitive damages alleged pursuant to the UTPA. *Id.* at 10-17. For the reasons that follow, this Court agrees with Defendant and concludes that the Court lacks subject matter jurisdiction over this action.

**I.     Diversity of Citizenship**

For purposes of determining diversity of citizenship, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The Supreme Court has held that a principal place of business

> is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's 'nerve center.' *And in practice it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination*, *i.e.*, the 'nerve center,' and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion).

*Hertz Corp. v. Friend*, 559 U.S 77, 92-93 (2010) (emphasis added).  The Court explained that "[a] corporation's 'nerve center,' usually its main headquarters, is a single place." *Id.* at 93.  The party asserting diversity jurisdiction has the burden of persuasion for establishing it.  *Id.* at 96.

Additionally, subject-matter jurisdiction in diversity cases depends on facts that existed at the time of filing the action.  *Mollan v. Torrance*, 22 U.S. 537, 539 (1824).  Citizenship of the parties is determined at the time the complaint is filed.  *Dole Food Co. v. Patrickson*, 538 U.S. 468, 478 (2003).  When a defendant factually challenges the plaintiff's assertion of jurisdiction, a court does not presume the truthfulness of the plaintiff's allegations and may consider evidence extrinsic to the complaint.  *See Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012).  Given their limited jurisdiction, federal courts have repeatedly held that a complaint must include allegations of both the state of incorporation and the principal place of business of corporate parties.  *Harris v. Rand*, 682 F.3d 846, 850 (9th Cir. 2012).  Thus, a corporation may be a citizen of more than one state—the state of incorporation and the state of its principal place of business.

In this case, there is no dispute that Defendant is a citizen of Oregon and that ISI is incorporated in Florida.  Thus, the narrow issue presented is whether ISI's principal place of business is in Florida or Oregon.

Defendant asserts that ISI's principal place of business is in Oregon.  In support of that contention, Defendant submitted two forms of documentation that ISI filed with the Oregon Secretary of State: (1) an "Application for Authority" for the entity name Immigration Solutions, Inc., which stated that the mailing address for the corporation, and the address for the President, Secretary, and Registered Agent (Mr. Asbury), were all in Oregon; and (2) an "Application for Registration" by ISI to conduct business under the assumed business name ("ABN") of "Sam

Asbury" in Oregon.  Def.'s Mot. Dismiss 3; Decl. Martin C. Dolan ("Dolan Decl."), Ex. 1 at 1-2,

ECF 14-1; Ex. 2, ECF 14-2.  These two documents were filed with the Oregon Secretary of State

six days after ISI filed its Articles of Incorporation in Florida on January 22, 2018.  *Id.*  The

"Application for Authority" lists ISI's state of incorporation and primary physical location as

Tampa, Florida.  However, the Application for Registration lists ISI's physical address and

principal place of business for ABN Sam Asbury in Oregon.  Dolan Decl., Ex. 2.  Additionally,

ISI filed Annual Reports with the Oregon and Florida Secretaries of State in 2020 and 2021.  *Id.*

at Ex. 1 at 3-4; Ex. 4 at 2, ECF 14-4.  In these reports, ISI listed its corporate mailing address in

Oregon.  *Id.*

 In response, ISI asserts that its headquarters in Florida is, in fact, its principal place of

business.  Pl.'s Resp. Mot. Dismiss 3.  Mr. Asbury purchased an office condominium in Florida

between 2012 and 2013 and made the Florida office ISI's headquarters.  *Id.* at 4.  Further, ISI

alleges that its Florida headquarters is the "actual center of direction, control, and coordination"

because its business functions and operates primarily at the Florida headquarters.  *Id.* at 8.

 The Court concludes that ISI's principal place of business at the time of filing is

ambiguous.  ISI's characterization of its practice as a "virtual practice untethered to a single

office" suggests ambiguity in ISI's true nerve center.  Def.'s Reply Pl.'s Resp. Def.'s Mot.

Dismiss ("Def.'s Reply") 6.  However, the Court in *Hertz* emphasized the importance of

administrative simplicity in applying the "nerve center" approach.  *See Hertz*, 599 U.S. at 94.

Simply put, the nerve center test was intended to make it easier for courts to determine a

company's principal place of business: "Courts do not have to try to weigh corporate functions,

assets, or revenues different in kind, one from the other."  *Id.* at 96.

Here, ISI has the burden of establishing its principal place of business.  Concern for administrability cannot override a plaintiff's burden of persuasion in establishing that subject matter jurisdiction exists.  In both its complaint and response, ISI fails to provide specific facts that would suggest where its principal place of business was at the time of filing in August 2021. Rather than pointing to specific dates or documents that could establish ISI's principal place of business as Florida in August 2021, ISI only makes broad, sweeping statements about general business activity from a time period spanning its creation in 2012 through 2021.  The Court does not find these broad and time-expansive generalizations convincing in establishing diversity between the parties at the time of filing.

Moreover, there is evidence that when the complaint was filed, ISI's actual center of direction, control, and coordination was in Oregon.  The only evidence of ISI's *specific* business activities during August 2021 is evidence regarding the property renovation in Oregon. Additionally, Mr. Asbury's physical presence in Oregon in August 2021, ISI's corporate mailing address being in Oregon in 2021, Dolan Decl. Ex. 4 at 2, and the location of ISI's other business operations in Oregon, Dolan Decl. Ex. 3, ECF 14-3, all suggest that ISI's nerve center was in Oregon at the time of filing the complaint.  For these reasons, this Court concludes that ISI has not met its burden of demonstrating that it is a citizen of Florida and therefore has not satisfied the diversity requirement for subject matter jurisdiction.

## II.    Amount in Controversy

ISI has the burden of proving, by a preponderance of the evidence, that the amount in controversy exceeds $75,000.  *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 839 (9th Cir. 2002).  In this regard, the district court may consider whether it is "facially evident from the complaint that more than $75,000 is in controversy."  *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d

1089, 1090 (9th Cir.2003).  In determining the amount in controversy, a district court may

consider the amount of compensatory and punitive damages recoverable based on the plaintiff's

complaint as well as attorney fees but may not consider interest and cost of suit.  *Meisel v.*

*Allstate Indent. Co.*, 357 F. Supp. 2d 1222, 1225 (E.D. Cal. 2005).

Importantly, the "mere possibility of a punitive damages award is insufficient to prove

that the amount in controversy requirement has been met."  *Burk v. Med. Sav. Ins. Co.*, 348 F.

Supp. 2d 1063, 1069 (D. Ariz. 2004).  To justify dismissal, "it must appear to a legal certainty

that the claim is really for less than the jurisdictional amount."  *Crum v. Circus Circus Enters.*,

231 F.3d 1129 (9th Cir. 2000) (internal quotation omitted).  Under the "legal certainty" standard,

a federal court has subject matter jurisdiction unless "upon the face of the complaint, it is

obvious that the suit cannot involve the necessary amount."  *St. Paul Mercury Indemnity Co. v.*

*Red Cab Co.*, 303 U.S. 283, 292 (1938).

In this case, ISI seeks $15,918 in damages under its breach of contract claim for "refund

of amount paid," $15,276 under its breach of contract claim for "loss of income," and $811 in

damages under its theft claim.  Compl. ¶¶ 34-36; Def.'s Mot. Dismiss 13.  These damages total

only $32,005.  ISI's only claim for punitive damages arises under Oregon's Unlawful Trade

Practices Act ("UTPA"), ORS 646.605 *et seq.*; Compl. ¶¶ 28, 37.  ISI is seeking $320,050 in

punitive damages, which is "ten times the amount of the requested compensatory damages."

Compl. ¶ 37.  Defendant asserts that, because the punitive damages comprise most of the amount

in controversy, "the claim should be given particularly close scrutiny."  Def.'s Mot. Dismiss 13

(citing *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1046 (3d Cir. 1993)).  Defendant further

asserts that ISI fails to point to any facts that would support an award of punitive damages in this

case.  *Id.*  This Court agrees.

The UTPA "applies only to consumer transactions; it does not regulate commercial transactions." *Ave. Lofts Condos. Owners' Ass'n v. Victaulic Co.*, 24 F. Supp. 3d 1010, 1015 (D. Or. 2014) (citing *Investigators, Inc. v. Harvey*, 53 Or. App. 586, 590 (1981))*. See also Denson v. Ron Tonkin Gran Turismo, Inc.*, 279 Or. 85, 90 n.4 (1977) (explaining that the "policy underpinning" the UTPA is "protection of consumers").  Under the UTPA, "consumer goods" are defined as "any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes." *Victaulic Co.*, 24 F. Supp at 1017. To determine whether a claim under the UTPA exists, plaintiff must show: (1) whether the real estate, goods or services at issue are customarily bought by a substantial number of consumers for personal, family, or household purposes, and (2) whether the real estate, goods or services were in fact purchased by the plaintiff for personal, family, or household purposes, rather than for commercial use or resale.  *Id.* at 1016 (citing *Searle v. Exley Express*, 278 Or. 535, 540 (1977)).

Here, ISI could not assert a claim under the UTPA because ISI and Defendant engaged in a commercial transaction.  The services at issue involved Defendant's construction at ISI's residential investment property.  Compl. ¶¶ 4, 9.  Although ISI labeled the property as "residential," ISI also labels the property "as an investment" that required repairs and "could be rented to someone."  Compl., Ex. F, Affidavit of Samuel W. Asbury ("Asbury Affidavit") ¶ 4, ECF 2-6.  Here, the characterization of the property as an "investment" property eliminates the possibility of a claim under the UTPA.  Although construction contractor services could be purchased by consumers for personal purposes, ISI did not, in fact, contract with Defendant for construction services for personal or household purposes.  Rather, ISI's contract with Defendant was explicitly made with the purpose of renovating the property into a suitable rental property,

thereby making the transaction commercial.  Because ISI cannot assert a claim under the UTPA,

ISI cannot recover punitive damages under any provision of the UTPA as a matter of law.[2]

For this reason, ISI does not provide an adequate factual basis for the inclusion of

$320,050 in punitive damages under the UTPA.  Indeed, ISI cannot recover punitive damages

under the UTPA as a matter of law, leaving only $32,005 in compensatory damages at issue.

Therefore, this case fails to meet the threshold amount in controversy required for federal subject

matter jurisdiction.

## CONCLUSION

Defendant's Motion to Dismiss (ECF 13) is GRANTED and this case is DISMISSED

without prejudice.  All other motions, including Defendant's Motion to Disqualify Counsel (ECF

15), are DENIED as moot.

IT IS SO ORDERED.

DATED this 15th day of February, 2022.

_____
ANDREW HALLMAN
United States Magistrate Judge

---

[2] Defendant highlights that neither ISI's complaint nor response to Defendant's Motion to
Dismiss specifies which provision(s) of the UTPA would apply here.  Def.'s Reply at 12-22.
Because the Court has already concluded that ISI would not be permitted to pursue a claim under
the UTPA based on the commercial nature of the underlying transaction, the Court declines to
speculate which provision ISI intended to rely on or address Defendant's additional arguments
concerning the applicability of certain provisions of the UTPA.